## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

───────────────

**PUEBLO OF SANTA ANA**, and, **TAMAYA
ENTERPRISES, INC.,**

      Plaintiffs,

      v.                                      Civ. No. 11-0957 BB-LFG

**HONORABLE NAN G. NASH,** District Judge,
New Mexico Second Judicial District, Division
XVII, in her Official Capacity; **GINA MENDOZA**,
as Personal Representative Under the Wrongful
Death Act of Michael Mendoza, Deceased; **F.
MICHAEL HART**, as Personal Representative
Under the Wrongful Death Act of Desirée
Mendoza, Deceased; and **DOMINIC MONTOYA,**

      Defendants.

## <u>MEMORANDUM OPINION</u>

      This action comes before the Court on the Personal Representatives' motion to dismiss for

want of subject matter jurisdiction [Doc. 15], and the Honorable Judge Nan G. Nash's motion to

dismiss [Doc. 18].  Having read the briefs and the relevant caselaw, the Court will deny the

Personal Representatives' motion.  The Court will then grant in part and deny in part Judge

Nash's motion.

### Facts and Procedural Background

      The Court derives the facts from the Complaint, *see generally* Doc. 1, and presumes them

to be true for the sake of the present motions.  *See Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210,

1215 (10th Cir. 2007).

      According to the Complaint, Tamaya Enterprises, Inc. ("Tamaya") operates the Santa Ana

Star Casino, located on Santa Ana Pueblo land, and thus within Santa Ana Indian Country.  The

Star Casino is operated pursuant to the terms of a class III compact between the Pueblo of Santa

Ana ("Santa Ana") and the State of New Mexico (the "Compact").  Section 8(A) of the Compact

provides that claims for compensatory damages for bodily injury or property damage "may be

brought in state district court " even if the claims arose on tribal land.[1]

Desirée Mendoza, Michael Mendoza, and Dominic Montoya (collectively the "Personal

Representatives") attended a wedding reception at the Star Casino on the evening of July 9, 2006.

They were served alcoholic beverages at the Casino by Tamaya employees.  Despite the apparent

intoxication of Desirée and Michael, Tamaya employees allegedly continued to serve them

alcohol.  Following the reception, Michael and Desirée left the Casino in a vehicle with Dominic,

heading south on Interstate 25.  Just north of the Tramway exit, the vehicle rolled over, claiming

the lives of Michael and Desirée, and injuring Dominic.

Gina Mendoza and F. Michael Hart, in their capacity as representatives for Michael and

Desirée respectively, filed suit in state district court under the New Mexico Wrongful Death Act,

NMSA 1978, § 41-2-1, *et seq.*[2]  The state court complaint alleges that Tamaya, through its

agents, servants, or employees, knew or should have known that Desirée and Michael were

intoxicated, yet continued to sell and serve them alcohol.  Further, the state court complaint

alleges that the serving and sale of alcohol was negligent and in reckless disregard for Desirée

and Michael's safety and was the proximate cause of their deaths.

Tamaya moved to dismiss the case for failure to state a claim upon which relief could be

granted.   With respect to the state court's jurisdiction, Tamaya argued that New Mexico law

---

[1] Section 8(D) further provides that the Pueblo waives its sovereign immunity in connection with any such claims.

[2] Dominic also filed suit due to the injuries incurred in the accident.  However, since his claim was not the subject of the appeal to New Mexico Supreme Court in *Mendoza v. Tamaya Enters.*, 258 P.3d 1050 (N.M. 2011), it is not discussed in detail here.

2

provides that alcohol sales on Santa Ana Pueblo land must be governed by Pueblo law.  Section 191 of the Pueblo Liquor Ordinance, 71 Fed. Reg. 17,903, 17,910 (Apr. 7, 2006) ("Liquor Ordinance"), in turn, provides that any action premised on a violation of the Liquor Ordinance "*shall* be brought in the Tribal Court of the Pueblo, which court shall have exclusive jurisdiction thereof."  *Id.* (emphasis added).  Accordingly, Tamaya asserted that the Personal Representatives could only bring their claim in tribal court: the state district court lacked jurisdiction.  Following a hearing on the motion, the state district court dismissed the case.

On appeal, the New Mexico Court of Appeals disagreed, holding instead that the district court had jurisdiction over the action based on the plain terms of Section 8(A) of the Compact. *Mendoza v. Tamaya Enters.*, 238 P.3d 903, 910-11 (N.M. App. 2010).  The Casino then petitioned for and was granted a writ of certiorari to the New Mexico Supreme Court.

The New Mexico Supreme Court affirmed the Court of Appeals, as set forth in the published opinion of *Mendoza v. Tamaya Enterprises, Inc.*, 258 P.3d 1050 (N.M. 2001) (hereinafter "*Mendoza*").  First, the New Mexico Supreme Court addressed whether the state district court had jurisdiction over the case.  *Id.* at 1054-55.  The court noted that Section 8(A) of the Compact provides state court jurisdiction over personal injury claims brought by persons who suffer personal injury proximately caused by the tribal entity authorized to conduct gaming pursuant to the Compact.  *Id.*  The court then cited its prior decision in *Doe v. Santa Clara Pueblo*, 154 P.3d 644 (N.M. 2007), for the proposition that the "jurisdictional shifting" provisions in the Compact, namely Section 8(A), were enforceable.  Thus, even though the Liquor Ordinance provided exclusive jurisdiction in tribal court, "by virtue of Section 8 of the Compact, the Pueblo unambiguously agreed to proceed in state court for claims involving injuries proximately caused by the conduct of the Casino."  *Mendoza*, 258 P.3d at 1055.

3

Secure in its jurisdiction, the New Mexico Supreme Court then proceeded to the merits of the Personal Representatives' wrongful death claims.  The court ultimately concluded that the state court complaint stated sufficient facts to establish a third-party common law claim with respect to the passenger of the vehicle as well as a patron claim with respect to the driver.  *Id.* at 1057-60.  The court thus remanded the case to the district court for further proceedings consistent with the opinion.  *Id.* at 1060.

After the case had been remanded, Tamaya and Santa Ana filed a complaint in this Court seeking relief in the form of (1) a declaration that the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 (1994) ("IGRA"), does not permit the shifting of jurisdiction from tribal courts to state courts over private personal injury lawsuits brought against tribes or tribal entities with respect to claims arising within Indian country, and (2) an order prohibiting Judge Nash from exercising jurisdiction over the state court proceeding and enjoining the Personal Representatives from pursuing their claims in the state court proceeding.

The Personal Representatives move to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(1) for want of federal subject matter jurisdiction under the *Rooker-Feldman* doctrine.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  Simultaneously, Judge Nash moves to dismiss the case under Rules 12(b)(1), 12(b)(6), and 12(b)(7).

### Standard of Review

"[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Accordingly, when reviewing the sufficiency of a complaint under Rule 12(b)(6), the Court

4

"must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In making its determination, the Court must accept all well-pleaded factual allegations as true, viewing them in the light most favorable to Tamaya and Santa Ana, and drawing reasonable inferences therefrom. *Twombly*, 550 U.S. at 555–56; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

### I. Personal Representatives' Motion to Dismiss Pursuant to *Rooker-Feldman*

The *Rooker-Feldman* doctrine holds that "a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994). Recently, the U.S. Supreme Court has emphasized that *Rooker-Feldman* is a narrow doctrine which only applies in a limited set of circumstances: "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basics Indus.*, 544 U.S. 280, 284 (2005).

In their motion to dismiss, the Personal Representatives claim that Tamaya and Santa Ana seek nothing more than further review of the judgments entered by the New Mexico Supreme Court in *Santa Clara Pueblo* and/or *Mendoza*. Such review, the Personal Representatives claim, is barred by the *Rooker-Feldman* doctrine. The Court must disagree.[3]

_____

[3] This does not necessarily mean that this Court must address the claims on the merits, however. There are several other procedural basis that may impede or preclude a discussion on

**A. *Doe v. Santa Clara Pueblo***

The first question is whether *Rooker-Feldman* is implicated by the New Mexico Supreme Court's decision in *Santa Clara Pueblo*.  Decided in 2007, *Santa Clara Pueblo* held that the jurisdictional shifting provisions in the Compact, specifically Section 8(A), were not expressly prohibited by the IGRA.  *Santa Clara Pueblo*, *supra*, 154 P.3d at 648.  To the contrary, the New Mexico Supreme Court held that the IGRA implicitly authorizes a process whereby the tribes and state can "allocate most or all of the jurisdictional responsibility to the tribe, to the State or to any variation in between."  *Id.* at 654 (quoting S. Rep. No. 100–446, at 14 (1988), U.S. Code Cong. & Admin. News 1988, at 3084).  The court thus concluded that Congress envisioned such jurisdictional agreements as that found in Section 8(A) of the Compact, thereby rendering them enforceable.  *Id.* at 656.

Despite the holding in *Santa Clara Pueblo*, Tamaya and Santa Ana now seek relief in this Court in the form of an order declaring the jurisdictional shifting provisions in the Compact unenforceable under the IGRA.  Relying on *Williams v. Lee*, 358 U.S. 217 (1959) and its progeny, Tamaya and Santa Ana argue that state courts have no jurisdiction to hear a suit by a non-Indian plaintiff against a tribal enterprise that arose from an alleged wrong committed within Indian country.  Doc. 24, at 1.  They further claim that the IGRA does not permit state courts to exercise jurisdiction over such suits.  *Id.* at 3.  Accordingly, they assert that Section 8(A) of the compact is unenforceable, despite the fact that Santa Ana expressly agreed to the language found in the Compact.  Clearly then, Tamaya and Santa Ana seek review of precisely the issue decided by the New Mexico Supreme Court in *Santa Clara Pueblo*.  Indeed, they appear to admit as

the merits.

much in their briefing to this Court.  *Id.* (noting that "the issue plaintiffs present to the Court in this case . . . may be identical to the issues litigated in [*Santa Clara Pueblo*]").  For *Rooker-Feldman*, the key question, however, is not whether Tamaya and Santa Ana are raising the same issue decided in *Santa Clara Pueblo*; rather, the dispositive question is whether they were parties to *Santa Clara Pueblo*.

It is apparent that neither Tamaya nor Santa Ana were a party to *Santa Clara Pueblo*.  *Santa Clara Pueblo* involved two separate personal injury lawsuits filed by non-tribal members against the Santa Clara and the San Felipe Pueblos.  154 P.3d at 646.  The incidents underlying each lawsuit occurred at Santa Clara's Big Rock Casino and San Felipe's Casino Hollywood.  *Id.*  Both cases were filed in state district court.  Both cases were then consolidated on appeal and argued before the New Mexico Supreme Court.  But, neither Tamaya nor Santa Ana was a full party to the proceedings, and thus neither was in a position to seek review of *Santa Clara Pueblo* in the U.S. Supreme Court.  Accordingly, *Rooker-Feldman* is not implicated by the decision in *Santa Clara Pueblo*.  *See Lance v. Dennis*, 546 U.S. 459, 464 (2006) ("*Rooker–Feldman* [is] inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding.") (citing *Johnson*, 512 U.S. at 1006); *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1109 (10th Cir. 2000) (holding that the *Rooker-Feldman* doctrine "should not be applied against non-parties" to a state-court judgment).

Even so, the Personal Representatives argue that Santa Ana was a party in *Santa Clara Pueblo*, either in its role as amicus curiae or by virtue of the fact that it took the same position as the defendants in that case, the pueblos of Santa Clara and San Felipe.  These arguments are unavailing.  While Santa Ana did participate in *Santa Clara Pueblo* as an amicus curiae, its status as an amicus party is insufficient to invoke *Rooker-Feldman*.  *See Bennett v. Yoshina*, 140 F.3d

7

1218, 1224 (9th Cir. 1998) ("mere participation in the state case as amici does not invoke the

*Rooker / Feldman* bar"); *Exxon Corp. v. Board of Educ. of Lamar County, Miss.*, 849 F.Supp.

479, 487 (S.D. Miss 1994), *aff'd, sub nom.*, *Buckley v. Natchez-Adams School*, 68 F.3d 472 (5th

Cir. 1995) (per curiam).  This is so because amici are not actual parties to a case, cannot conduct

discovery, and, most importantly, do not have the right to appeal an adverse decision to the U.S.

Supreme Court.  *See De Grandy*, 512 U.S. at 1006 (declining to apply *Rooker-Feldman* when the

federal-court plaintiff "was not a party in the state court," and "was in no position to ask [the U.S.

Supreme] Court to review the state court's judgment").  Similarly, even if Santa Ana, in its role

as an amicus party, made the same arguments as the attorneys for the San Felipe and Santa Clara

Pueblos, it does not follow that *Rooker-Feldman* deprives this Court of jurisdiction.  *See Mo's*

*Express, LLC v. Sopkin*, 441 F.3d 1229, 1236 (10th Cir. 2006) ("a 'commitment' to the same

claims and arguments has no bearing on the applicability of *Rooker-Feldman*") (quoting *Exxon*

*Mobil*, 544 U.S. at 288 n. 2).[4]

**B. *Mendoza v. Tamaya Enterprises, Inc.***

       Alternatively, the Personal Representatives argue that *Rooker-Feldman* is implicated by

the decision in *Mendoza*.  In response, Tamaya and Santa Ana argue that the instant case is not

---

       [4] Furthermore, the U.S. Supreme Court has firmly cautioned against conflating preclusion law with the *Rooker-Feldman* doctrine.  *Lance*, 546 U.S. at 466 ("*Rooker Feldman* is not simply preclusion by another name").  Thus, the Court is unconvinced by the Personal Representatives' argument that Santa Ana was in privity with Santa Clara and San Felipe by virtue of the fact that the lead attorney for San Felipe and Santa Clara in *Santa Clara Pueblo* now represents Santa Ana in the instant case.  Doc. 16, at 6.  While the U.S. Supreme Court did leave room for an extremely limited form of privity analysis in determining the scope of *Rooker-Feldman*, such as "where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent . . . ." *Lance*, 546 U.S. at 466 n. 2, the Personal Representatives have failed to demonstrate that Santa Ana was either a predecessor or successors in interest to the parties in *Santa Clara Pueblo*.  *See Mo's Express*, 441 F.3d at 1236.

barred by *Mendoza* because (1) they are not directly attacking the decision in *Mendoza*, let alone seeking appellate review of that decision in this Court; (2) the judgment in *Mendoza* is not final for the purposes of *Rooker-Feldman* due to the remand order to state district court; and (3) Santa Ana was not a party to the decision in *Mendoza* and thus could not have sought review of that decision in the U.S. Supreme Court.  The Court's analysis focuses on the first issue, namely whether Tamaya and Santa Ana are directly attacking and effectively seeking appellate review of *Mendoza* in this Court – review that would be barred under *Rooker-Feldman*.

The *Rooker-Feldman* doctrine applies in scenarios where the federal plaintiff seeks appellate review of a state-court judgment.  The doctrine bars lower federal courts from hearing claims that were either (1) actually decided by a state court, *Rooker*, 263 U.S. at 415-16, or (2) "inextricably intertwined" with a prior state court judgment, *Feldman*, 460 U.S. at 482 n. 16.  In contrast, where a plaintiff is not attacking a state-court judgment itself, the *Rooker-Feldman* doctrine does not apply.  *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1169-71 (10th Cir. 1998).  For example, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  *Exxon Mobil*, 544 U.S. at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993).  In this light, the crucial inquiry is whether Tamaya and Santa Ana are attacking a claim either (1) already decided in *Mendoza* or (2) "inextricably intertwined" with that decision, or whether they present "some independent claim" to be addressed anew by this Court.

To begin, Tamaya and Santa Ana have not repaired to this Court to seek appellate review of an issue actually decided by the New Mexico Supreme Court in *Mendoza*.  In *Mendoza*,

Tamaya took the position that the Pueblo's Liquor Ordinance specified exclusive jurisdiction in tribal court, not state court. *Mendoza v. Tamaya Enters.*, *supra*, 258 P.3d at 1054. Put another way, Tamaya argued that the Liquor Ordinance contradicted Section 8 of the Compact which provided jurisdiction over such cases in state court. The New Mexico Supreme Court dismissed this argument. First, the court cited *Santa Clara Pueblo* for the proposition that the jurisdictional shifting provisions of the Compact were enforceable. *Id.* The court then explained that a prior version of the Liquor Ordinance was in place before Santa Ana entered into the Compact. *Id.* The court thus concluded that "by virtue of Section 8 of the Compact, the Pueblo unambiguously agreed to proceed in state court for claims involving injuries proximately caused by the conduct of the Casino." *Id.* at 1055.

Before this Court, Tamaya and Santa Ana now argue that the IGRA does not permit the shifting of jurisdiction over claims against tribal entities arising on tribal lands. Due to the lack of such explicit authorization from Congress, they argue that *Williams v. Lee* bars the consent to suit in state court found in Section 8(A) of the Compact. Thus, by asking this Court to review the Compact under the IGRA, Tamaya and Santa Ana have presented this Court with an "independent claim" for relief. *Exxon Mobil*, 544 U.S. at 293. While a decision on this argument could lead to a holding that the state court lacks jurisdiction, such a decision would not overturn *Mendoza's* conclusion that the Liquor Ordinance does not vest exclusive jurisdiction in tribal court. *See Bolden v. Topeka*, 441 F.3d 1129, 1144 (10th Cir. 2006) (noting that "*Rooker-Feldman* does not bar a federal-court suit raising a claim previously decided by a state court unless the federal suit actually seeks to overturn, as opposed to simply contradict, the

state-court judgment").[5]  In this light, neither Tamaya nor Santa Ana seeks review of claims actually decided by the New Mexico Supreme Court in *Mendoza*.

Nonetheless, the Personal Representatives argue that the issue raised before this Court regarding the IGRA is "inextricably intertwined" with the decision in *Mendoza*.  They assert that *Mendoza* was a clear reaffirmation of *Santa Clara Pueblo* – a decision holding that the IGRA permits the jurisdictional shifting provisions in the Compact.  Thus, given that Tamaya and Santa Ana are simply arguing that the IGRA does not permit the shifting of jurisdiction, the Personal Representatives reason that they are directly attacking and simply seeking appellate review of *Mendoza*, albeit in this Court as opposed to the U.S. Supreme Court.

The Tenth Circuit's decision in *Bolden* forecloses this argument.  *Bolden v. Topeka*, *supra*, 441 F.3d 1129.  There, the Tenth Circuit explored the U.S. Supreme Court's application of the term "inextricably intertwined."  *Id.*  The Tenth Circuit noted that this phrase "has no independent content."  *Id.* at 1141.  The Tenth Circuit further clarified the distinction between seeking appellate review of a state court judgment and raising an independent claim that threatens to contradict a state court judgment:

> Appellate review – the type of judicial action barred by *Rooker-Feldman* – consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law.  When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment

---

[5] Tamaya and Santa Ana have asked this Court to consider a legal argument rejected by the New Mexico Supreme Court in *Santa Clara Pueblo*.  If they were to prevail on the merits, the New Mexico Supreme Court will have held that the Compact is enforceable under the IGRA; the federal court that it is not enforceable.  Such a potential result is not alarming, so long as this Court does not exercise appellate jurisdiction over the decision in *Mendoza*.  *See Mo's Express*, 441 F.3d at 1238 (raising a similar concern, but noting that "[a] federal court is free to 'den[y] a legal conclusion that a state court has reached,' provided it does not exercise de facto appellate jurisdiction by entertaining a suit that would disrupt the final judgment entered by the state court") (quoting *GASH Assocs.*, 995 F.2d at 728).

by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.

*Id.* at 1143.  Here, neither Tamaya nor Santa Ana asks this Court to review the "bona fides" of the decision in *Mendoza.*  While Tamaya and Santa Ana attack the decision in *Santa Clara Pueblo* – a decision cited favorably in *Mendoza* – that does not equate into an attack on the proceedings in *Mendoza*.  Equally important, the Complaint "do[es] not rest on any allegations concerning the state-court proceedings or judgment."  *Id.* at 1145.  This Court will not be forced into an appellate review of the decision in *Mendoza*.  *See, e.g.*, *Kelly v. Wolpoff & Abramson, L.L.P.*, 2007 WL 2381536, at *5 (D. Colo. Aug. 17, 2007).

What is more, neither Tamaya nor the Pueblo seeks to undo or reverse the relief granted in *Mendoza*.  As the Tenth Circuit explained in *Mo's Express,* "when the relief sought by the plaintiffs would not reverse or 'undo' the state-court judgment, *Rooker-Feldman* does not apply." *Mo's Express*, 441 F.3d at 1237.  The Tenth Circuit thus deemed *Rooker-Feldman* inappropriate in that case because (1) the plaintiff asserted "general constitutional challenges" for the purpose of obtaining prospective injunctive and declaratory relief; and (2) if successful, the plaintiff's claims would not have disrupted a state-court judgment. *Id.* at 1237-38.  Similarly, in the instant case, Tamaya and Santa Ana have brought a general challenge to the state court's jurisdiction.  In other words, their claim would be identical even if there had been no state-court proceeding. What is more, they only seek prospective injunctive and declaratory relief.  Such relief, like the relief in *Mo's Express*, would not reverse or otherwise undo the relief granted by the New

Mexico Supreme Court in *Mendoza*.  Accordingly, *Rooker-Feldman* does not bar this Court's jurisdiction.[6]

That being said, Tamaya and Santa Ana's claims may still be precluded under res judicata doctrine.  *Id.* at 1145; *Exxon Mobil*, 544 U.S. at 293 (noting that a "federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment").  Two related doctrines operate to prevent repetitive litigation: claim preclusion and issue preclusion.  *Park Lake Resources L.L.C. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1135 (10th Cir. 2004).  At this point, however, the parties have not yet had the opportunity to address whether res judicata doctrine bars the claims in the instant case, focusing instead on the threshold issue of whether the Court has jurisdiction.

## II. Nash Motion to Dismiss

Judge Nash moves to dismiss the case on four grounds.  First, she claims immunity under the 11th Amendment and the doctrine of judicial immunity.  She further claims that the Anti-Injunction Act, 28 U.S.C. § 2283, and the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), bar this Court from enjoining the performance of her judicial duties.  Finally, Judge Nash emphasizes that the Plaintiffs have failed to join an indispensable party – the State of New Mexico (the "State").

### A. Judicial Immunity

*1. Eleventh Amendment Immunity*: The Complaint does not state any claims against the State of New Mexico ("State"); rather, claims are brought against Judge Nash in her official

---

[6] Based on this conclusion, the Court need not address the additional arguments presented by Tamaya and Santa Ana, namely that *Rooker-Feldman* does not apply because (1) *Mendoza* is not a final judgment for the purposes of *Rooker-Feldman,* and (2) Santa Ana was not a party to the decision in *Mendoza* and thus is not barred by *Rooker-Feldman*.

capacity.  In all respects other than name, however, an official-capacity suit is a suit against the governmental entity.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Moore v. City of Wynnewood*, 57 F.3d 924, 929 n. 4 (10th Cir. 1995).  Thus, the claim against Judge Nash is equivalent to an action against the State, and, as Judge Nash asserts, the Court must examine whether the Eleventh Amendment bars the official-capacity claims against her.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State."  *Ex Parte Young*, 209 U.S. 123 (1908), however, recognizes a narrow exception to the Eleventh Amendment where "a state officer may be enjoined from taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant."  *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (internal citation omitted).  In determining whether a suit falls within the *Ex Parte Young* exception, the Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Maryland, Inc. v. Pub. Ser. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotations omitted).

VThis case meets the requirements of *Ex Parte Young*.  The Complaint is filed against Judge Nash in her official capacity as a state district court judge in Division XVII of the Second Judicial District.[7]  Tamaya and Santa Ana allege that Judge Nash is acting without jurisdiction, in

---

[7] Here, the caption to the case identifies Judge Nash in both her official and individual capacities.  Tamaya and Santa Ana, however, disclaim any claims against Judge Nash in her individual capacity.  Doc. 27, at 6.  The caption thus improperly reflects any claim against Judge Nash in her individual capacity.  *Cooper v. New Jersey Trust Co. of Ridgewood, N.J.*, 250 F.Supp. 237, 239-40 (S.D. N.Y. 1965) (no legal claim against party named in official capacity only in caption).

violation of federal Indian common law and the Fourteenth Amendment. They thus seek prospective injunctive relief against Judge Nash in her capacity as a state district court judge; they do not seek retroactive monetary damages. The allegations thus satisfy the "straightforward inquiry" set forth by the U.S. Supreme Court in *Verizon*, 535 U.S. at 645. *See also Tarrant Regional Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008).

Judge Nash, however, argues that *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996), forecloses the instant claim – a claim under *Ex Parte Young* to enforce the IGRA. In that case, the Seminole Tribe of Florida brought an *Ex Parte Young* claim in federal court against the Governor of Florida seeking to enforce the state's duty to negotiate in good faith with the tribe as set forth in section 2710(d)(3) of the IGRA, 25 U.S.C. § 2710. The U.S. Supreme Court dismissed the claim against the Governor, holding that "where Congress has prescribed a detailed remedial scheme for the enforcement against a state of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young*." *Seminole Tribe*, 517 U.S. at 74-76.

The question, then, is whether Tamaya and Santa Ana's claim arises under a statutory right created under the IGRA. *See Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002) (emphasizing that the limitation in *Seminole Tribe* "applies only to a *statutorily* created right") (internal citations omitted). It does not. Tamaya and Santa Ana first argue that pursuant to federal Indian common law, the state lacks jurisdiction over the personal injury claims against Tamaya. What is more, they argue that the IGRA does *not* permit the shifting of jurisdiction to state court. In this light, it cannot be said that Tamaya and Santa Ana are seeking to enforce a statutorily created right under the IGRA. Rather, they are seeking to enforce federal Indian

15

common law.  Accordingly, *Seminole Tribe* does not foreclose their claim under *Ex Party Young*. *See Nelson*, 295 F.3d at 1097.

    **2. *Judicial Immunity***: Judge Nash also argues that she is immune from all suits, even suits for injunctive relief for actions taken in her official capacity.  It is well established that claims against judges for monetary damages are barred by the doctrine of absolute judicial immunity.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349 (1978).[8]  Tamaya and Santa Ana, however, do not seek monetary damages; instead, they seek prospective declaratory and injunctive relief.

    The Supreme Court has held that the doctrine of absolute immunity does not bar claims for prospective declaratory or injunctive relief.  *See Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984).  In 1996, however, Congress effectively reversed the Court's ruling with regard to injunctive relief by enacting the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847 (1996) (amending 42 U.S.C. § 1983).  As amended, § 1983 now provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall *not* be granted unless a declaratory decree was violated or declaratory relief was unavailable."  *Id.* at § 309(c) (emphasis added).  In light of this amendment, the Tenth Circuit has held that "the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well." *Lawrence v. Kuenhold*, 271 Fed. Appx. 763, 766 n. 6 (10th Cir. 2008).  Thus, injunctive relief

---

    [8] Despite its name, absolute judicial immunity is not absolute; it does not extend to (1) "non-judicial actions" or (2) actions "taken in the complete absence of jurisdiction."  *Mireles*, 502 U.S. at 11-12.

against a judicial officer will not be granted "unless a declaratory decree was violated or declaratory relief was unavailable." *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011).

With respect to their claim for injunctive relief, Tamaya and Santa Ana have failed to demonstrate that "a declaratory decree was violated or declaratory relief was unavailable," 42 U.S.C. § 1983. First, Judge Nash did not violate a declaratory decree, nor do Tamaya or Santa Ana contend that she did. Second, Tamaya and Santa Ana do not allege, nor does it appear, that declaratory relief was unavailable in the state proceeding. Accordingly, their claim for injunctive relief against Judge Nash is not cognizable under 42 U.S.C. § 1983. *See Knox*, 632 F.3d at 1292.

Their claim for a declaratory order, however, is not barred by judicial immunity. The Tenth Circuit has continued to recognize that judicial immunity is not a bar to declaratory relief. *Lawrence*, 271 Fed. Appx. at 766; 42 U.S.C. § 1983 (placing no limitations on declaratory relief). In the instant case, Tamaya and Santa Ana seek a declaration that the IGRA does not authorize the shifting of jurisdiction as found in Section 8(A) of the Compact. Put another way, they seek a declaration regarding the validity of the tribal grant of state court jurisdiction over future proceedings. Such an order, if granted, constitutes a form of prospective declaratory relief. *Lawrence*, 271 Fed. Appx. at 766 ("A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act."). Accordingly, it is not barred by Section 1983 as amended by the FCIA.

**B. *Younger* Abstention**

The *Younger* doctrine, as developed, requires abstention when federal proceedings would (1) interfere with an ongoing state judicial proceeding (2) that implicates important state interests and (3) that affords an adequate opportunity to raise the federal claims. *See, e.g.*, *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Taylor v. Jacquez*,

126 F.3d 1294, 1297 (10th Cir. 1997); *Seneca-Cayuga Tribe of Okla. v. Oklahoma*, 874 F.2d 709,

711 (10th Cir. 1989).  All three of these criteria must be met for *Younger* abstention to be

warranted.  *Seneca-Cayuga Tribe*, 874 F.2d at 711.  In applying the *Younger* test, the Court

adheres to the principle that abstention from the exercise of federal jurisdiction is considered "an

extraordinary and narrow exception to the duty of a District Court to adjudicate the controversy

properly before it."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813

(1976).

      First, there is clearly an ongoing state court judicial proceeding.  Litigation in the state

court has already reached the New Mexico Supreme Court, *see Mendoza*, 258 P.3d 1050, and is

now on remand to the state district court for further proceedings.  The Court thus turns to the

second *Younger* factor regarding whether the state proceedings implicate "important state

interests, matters which traditionally look to state law for their resolution or implicate separately

articulated state policies."  *Taylor*, 126 F.3d at 1297.

      Judge Nash argues that the State has an important interest in the interpretation and

application of the Personal Representatives' common-law tort claims.  True, state courts are

better qualified to interpret issues regarding the state's own common law.  *See R.R. Comm'n of

Tx. v. Pullman Co.*, 312 U.S. 496, 499-500 (1941) (noting that the "last word" on the

interpretation of state law issues from that state's highest court).  And, the proceedings in state

court have raised issues regarding personal liability under New Mexico common law and statutes

– issues which the state's highest court has resolved.  *See Mendoza*, 258 P.3d at 1055-60.

      This argument, however, overlooks the threshold question raised by Tamaya and Santa

Ana, namely whether the state court has jurisdiction in the first place to hear the Personal

Representatives' tort claims.  Resolving this jurisdictional question implicates tribal sovereign

immunity – an issue that is paramount and federal.  *See Seneca-Cayuga Tribe*, 874 F.2d 709, 713

(10th Cir. 1989) ("federal law, federal policy, and federal authority are paramount in the conduct

of Indian affairs in Indian Country"); *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202,

1204-05 (10th Cir. 2003) (affirming the district court's conclusion that the threshold question of

whether the state had jurisdiction to tax a tribe "was a matter of federal, not state, law").

Accordingly, due to the primacy of this federal jurisdictional issue, the state's interest in the

litigation is not significant enough to justify *Younger* abstention.  *Seneca-Cayuga Tribe*, 874 F.2d

at 714  (finding that when state court is asked to decide "issues of federal law where federal

interests predominate," such as whether state had jurisdiction to regulate tribes, "the State's

interest in the litigation is . . . not important enough to warrant *Younger* abstention"); *Fort Belnap*

*Indian Cmty. of the Fort Belnap Indian Reservation v. Mazurek*, 43 F.3d 428, 431-32 (9th Cir.

1994) (finding the "threshold question"—whether the state had jurisdiction to prosecute—to be

"paramount and federal," making *Younger* abstention inappropriate); *Sycuan Band of Mission*

*Indians v. Roache*, 54 F.3d 535 (9th Cir. 1994) (finding *Younger* abstention inappropriate where

threshold issue was whether state had jurisdiction to prosecute Indians pursuant to state gaming

laws) (quotations and citations omitted).

Alternatively, Judge Nash argues that the State has a significant interest in the integrity of

the Compact between the State of New Mexico and Santa Ana.  To the extent the integrity of the

Compact is at issue in this litigation – a point disputed by Tamaya and Santa Ana[9] – it is not a

sufficient enough interest to justify *Younger* abstention.  For example, in *Seneca-Cayuga Tribe*,

_____

[9] Santa Ana and Tamaya argue that their claims are based on federal Indian law,
including *Williams v. Lee*, 358 U.S. 217 (1959), not the language of the Compact.  Doc. 27, at
12.

19

Oklahoma argued that it had a significant interest in regulating bingo operations on tribal lands for two reasons: "preventing the infiltration of organized crime" and "protecting the State's economy and tax base."  874 F.2d at 712.  The Tenth Circuit minimized the importance of these interests by explaining that federal issues regarding the tribe's sovereignty vis-a-vis the state's right to regulate predominated.  *Id.* at 714.  Indeed, the Tenth Circuit went so far as to conclude that "[t]he federal nature of the law and of the issues to be decided, combined with this lack of state jurisdiction, reduce the State's interest in this litigation to the vanishing point."  *Id.* at 716.  This reasoning applies to the instant case where federal issues regarding Santa Clara's sovereignty and the state court's jurisdiction predominate.  Thus, *Younger* abstention would not be appropriate.[10]

### C. Anti-Injunction Act

Judge Nash argues that the Anti-Injunction Act requires dismissal.  The Anti–Injunction Act, 28 U.S.C. § 2283, does not preclude a federal court from enjoining a state court proceeding where such action: (1) has been "expressly authorized by Act of Congress"; (2) is necessary in aid of the federal court's jurisdiction; or (3) is necessary to effectuate a federal court's judgments.[11]  The straightforward language of the Act means that the injunctive relief sought in this action is precluded unless one of these three exceptions applies.  "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of

---

[10] Based on its conclusion that the Personal Representatives have failed to establish the second *Younger* factor, the Court need not consider the third *Younger* factor: whether there is an adequate opportunity in the state proceedings to raise federal questions.

[11] The Act provides, in pertinent part: "A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970).

The crux of Tamaya and Santa Ana's claim is that the state district court lacks jurisdiction over this type of personal injury suit.  They thus argue that an injunction fits the second exception to the Anti-Injunction Act, namely an injunction is "necessary in aid of [the federal court's] jurisdiction."  *See, e.g.*, *Bowen v. Doyle*, 880 F.Supp. 99, 130 (W.D.N.Y. 1995) (the necessary-in-aid-of-jurisdiction "exception has been expressly held to permit Indian tribes to bring federal court suits to enjoin state court proceedings where the threshold issue is whether the state court has jurisdiction over the subject matter of the dispute").  The problem with this argument, however, is that Tamaya and Santa Ana argue that tribal courts have exclusive jurisdiction over the type of claims brought by the Personal Representatives.  They do not argue that federal courts have exclusive jurisdiction over these claims.  It is thus unclear how an injunction, if issued by this Court, would be "necessary in aid of [*this* Court's] jurisdiction."  28 U.S.C. § 2283; *see also Sycuan Band of Mission Indians*, 54 F.3d at 540 (holding that an injunction of state proceedings was "necessary to preserve *exclusive federal jurisdiction*") (emphasis added).

That said, other federal courts have held that the second exception to the Anti-Injunction Act applies to preserve the integrity of tribal claims and/or tribal sovereignty.  For example, in *White Mountain Apache Tribe v. Smith Plumbing Co.*, 856 F.2d 1301, 1304 (9th Cir.1988), the Ninth Circuit recognized that an injunction of state proceedings might be appropriate "to preserve the integrity of tribal claims" in tribal court.  The Federal District Court of Arizona expanded on this point, holding that federal district courts may enjoin state court proceedings where "necessary to preserve the integrity of *Indian sovereignty*."  *Tohono O'odham Nation v. Schwartz*, 837 F.Supp. 1024, 1027–1028 (D. Ariz. 1993) (emphasis added) (citing *White*

*Mountain Apache*, 856 F.2d at 1304-1306).  This is appropriate for the federal courts, the *Tohono O'odham* Court explained, because "[s]trong federal policy encourages tribal self-government and tribal self-sufficiency."  *Id.* at 1028 (citing *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216–17 (1987)).

This Court need not resolve whether an injunction to preserve tribal sovereignty fits the necessary-in-aid-of-jurisdiction exception.  Instead, the Court concludes that the injunctive relief sought by Tamaya and Santa Ana fits the first exception because it is "expressly authorized by Act of Congress."  28 U.S.C. § 2283.  The Supreme Court has held that 42 U.S.C. § 1983 is a statute that "expressly authorize[s]" federal court injunctions against state court proceedings, and such suits are not subject to the bar of the Anti–Injunction Act.  *Mitchum v. Foster*, 407 U.S. 225, 243 (1972).  Here, the Complaint states a claim under section 1983, alleging that Judge Nash, by presiding over the state court case without jurisdiction, has deprived Tamaya of its interests secured under the Fourteenth Amendment.[12]  Thus, the suit is not barred by the Anti-Injunction Act.  *Id.*[13]

### D. The State of New Mexico Is Not An Indispensable Party

In deciding whether a party is indispensable under Rule 19(b), the Court applies a three-part analysis. *See Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).  First the court must determine whether an absent party is a required or necessary party.  *Id.*  If so, the court must then determine whether joinder of the required party is feasible.  *See*

---

[12] Even though Section 1983 bars the claim for injunctive relief against Judge Nash, *see* Section II.A.2, *infra*, Tamaya and Santa Ana still have a viable claim for declaratory relief under Section 1983.

[13] The Court need not reach Tamaya and Santa Ana's additional argument that the Anti-Injunction Act does not apply to Indian Tribes suing under 28 U.S.C. § 1362.

Fed. R. Civ. P. 19(a)-(b).[14]  Finally, if a party is necessary, but joinder is not feasible, "the court must decide whether the absent person is "indispensable," i.e., whether in "equity and good conscience" the action can continue in his absence."  *Norton*, 248 F.3d at 997; *see also* Fed. R. Civ. P. 19(b) (setting forth factors for determining whether a party is indispensable).

The Court's analysis under rule 19(b) begins with the issue of whether the State of New Mexico is a required or necessary party.  A party is necessary if:

> (A) in the person's absence complete relief cannot be accorded among those already parties, or (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).  Here, the Court can afford complete relief in the absence of the State.  The Complaint seeks a declaration that state courts may not exercise jurisdiction over the type of personal injury suits brought by the Personal Representatives (i.e. claims by non-Indians against a tribal entity for an injury arising on tribal lands).  The Complaint further seeks an injunction barring the Personal Representatives from proceeding in state court.  In this light, the absence of the State does not bar complete relief.  Fed. R. Civ. P. 19(a)(1)(A); *Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001) (A court is able to afford complete relief when a party's absence "does not prevent the plaintiffs from receiving their requested . . . relief.").

The remaining question then, is whether allowing this suit to go forward without the State impermissibly risks impairing the State's ability to protect its interests.  *See* Fed. R. Civ. P.

---

[14] In the instant case, Tamaya and Santa Ana concede that joinder of the State would not be feasible because the State possesses sovereign immunity.  Doc. 27, at 16.

19(a)(1)(B)(i).[15]  The State first argues that it has an interest in the integrity and interpretation of

the Compact – an agreement reached between the State and Santa Ana.  This case does not,

however, turn on an interpretation of the Compact.  Rather, the issue presented by Tamaya and

Santa Clara is whether the IGRA permits the shifting of jurisdiction to state court for personal

injury suits against tribal enterprises.  What is more, the Compact itself expressly contemplates

the role of either a federal and/or state court in resolving this jurisdictional issue.[16]   In this light,

disposition of this action will not impair or impede the State's interest in the Compact.[17]

      The State further argues that it has an interest in providing citizens with a forum to litigate

their personal injury claims against a tribal enterprise that arose on Indian land.  A decision by

this Court, the State claims, could deprive citizens of a state forum for their claims.  The Tenth

Circuit, however, has explained that "in some cases the interests of the absent person are so

aligned with those of one or more parties that the absent person's interests are, as a practical

matter, protected."  *Davis ex. rel. Davis v. United States*, 343 F.3d 1282, 1291-92 (10th Cir.

2003).  Here, the Personal Representatives – citizens of New Mexico – seek to bring their

personal injury claims against Tamaya in state court.  They thus have a substantial interest in

---

[15] The State does not argue that allowing this case to proceed without it will subject it to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).

[16] Section 8(A) of the Compact states: "For purposes of this Section, any such claim may be brought in state district court . . . unless it is finally determined by a state or federal court that the [IGRA] does not permit the shifting of jurisdiction over visitors' personal injury suits to state court."

[17] Indeed, in *Doe v. Santa Clara Pueblo*, *supra*, 154 P.3d 644, the New Mexico Supreme Court thoroughly analyzed whether the IGRA permitted the jurisdictional shifting provisions in the Compact.  *Id.* at 646-57.  Despite the absence of the State as a named party, the court did not hesitate to conclude that Section 8(A) was enforceable under the IGRA.

securing a state forum – the same interest the State seeks to protect on their behalf.  In this light, the Personal Representatives' interests are, as a practical matter, aligned with the State's interest. Because the Personal Representatives are a party to this case, the Court concludes that the State is not a necessary party to this action under Rule 19.  *Id.*; *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001).

### Conclusion

For the foregoing reasons, the Court will deny the Personal Representatives' motion.  The Court will grant Judge Nash's motion to dismiss the claim for injunctive relief, but otherwise deny her motion.


Dated this 10th day of April, 2012.


BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE