IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**Pueblo of Santa Ana and Tamaya Enterprises, Inc.**

 Plaintiff,

   v.              Civ. No. 11-0957 BB-LFG

**Honorable Nan G. Nash, District Judge, New Mexico Second Judicial District, Division XVII, in her Individual and Official Capacities; Gina Mendoza, as Personal Representative under the Wrongful Death Act of Michael Mendoza, Deceased; F. Michael Hart, as Personal Representative under the Wrongful Death Act of Desiree Mendoza, Deceased; and Dominic Montoya,**

 Defendants.

## Memorandum Opinion

In this case the Pueblo of Santa Ana (the "Pueblo") and its tribal enterprise, Tamaya Enterprises, Inc. ("Tamaya"), seek a declaration that the Indian Gaming Regulatory Act of 1988, 25 U.S.C. §§2701-2721 (2011) ("IGRA"), does not allow the shifting of jurisdiction from tribal court to state court for tort actions where a casino visitor has been injured by a tribal gaming enterprise. Doc 1, ¶¶ 14-18 ("Complaint"). Before reaching the merits of the Complaint, the Court must resolve the instant motion [Doc. 60] involving the doctrines of res judicata and collateral estoppel. The Personal Representatives of Michael and Desiree Mendoza argue that the claim or issue raised in the Complaint was actually litigated and necessarily decided in a previous state court decision between the same parties and/or their privies: *Mendoza v. Tamaya Enterprises, Inc.*, 258 P.3d 1050, 1054-55 (N.M. 2011). The Personal Representatives thus urge the Court to conclude that either res judicata or collateral estoppel precludes relitigation of this

jurisdictional issue. Having read the briefs and being fully informed of the issues therein, the Court will rule as follows.

## I. Background

### A. The Jurisdiction-Shifting Provisions in the Compact

Pursuant to the IGRA, the State of New Mexico and the Pueblo of Santa Ana negotiated the terms of a Tribal-State Class III Gaming Compact (the "Compact") that permits Tamaya to operate the Santa Ana Star Casino on behalf of the Pueblo.[1] This negotiation process led to the various provisions in the Compact, including Section 8(A) which "allows for personal injury actions against a Pueblo 'to proceed either in binding arbitration . . . or in a court of competent jurisdiction.'" *Doe v. Santa Clara Pueblo*, 154 P.3d 644, 647 (N.M. 2007) (quoting Section 8(A) of the Compact). A court of competent jurisdiction includes state courts subject to the following condition: "Any such claim may be brought in state district court, including claims arising on tribal land, unless it is finally determined by a state or federal court that IGRA does not permit the shifting of jurisdiction over visitors' personal injury suits to state court." *See* Compact, §8(A).[2]

In *Doe v. Santa Clara Pueblo*, the New Mexico Supreme Court held that Section 8(A)'s jurisdiction-shifting provision is enforceable. 154 P.3d at 648-652. There, the Santa Clara and San Felipe Pueblos, along with the Pueblo of Santa Ana as amicus party, challenged Section 8(A) of the Compact. The Pueblos argued that the IGRA does not expressly grant the state or tribes authority to shift to state courts jurisdiction over personal injury suits arising on Indian lands. *Id.* at 648. The New Mexico Supreme Court deemed this point "inconsequential" for the

---

[1] New Mexico has entered into gaming compacts with eleven Pueblos and two other tribes. *See Doe*, 154 P.3d at 646 n.1.

[2] The text of the Compact can be found at http://www.nmgcb.org/tribal/compacts.html.

Compact itself "gave state courts jurisdiction over personal injury claims, conditioned not upon IGRA *allowing* such jurisdiction shifting, but upon IGRA *not prohibiting* jurisdiction shifting." *Id.* The court thus held that the Pueblos, by crafting and agreeing to the "clear language" in Section 8(A), had consented to state court jurisdiction for personal injury suits against casinos that implicate visitor safety concerns. *Id.* at 648-49.

In an attempt to overcome the clear language in Section 8(A), the Pueblos cited *Williams v. Lee*, 358 U.S. 217 (1959), and *Kennerly v. District Court*, 400 U.S. 423 (1971), for the proposition that "a tribe can never consent to state court jurisdiction over civil matters arising on tribal lands without the consent of Congress." *Id.* at 649-50. Because the IGRA did not expressly authorize tribes to cede jurisdiction over visitors' personal injury suits, the Pueblos argued that their consent to the jurisdiction-shifting provision in Section 8(A), albeit clear and unequivocal, was actually unauthorized and therefore ineffective. *Id.* The New Mexico Supreme Court dismissed this argument, concluding instead that Congress, by enacting the IGRA, envisioned and authorized tribes to consent to jurisdiction-shifting provisions in gaming compacts. *Id.* at 656. Indeed, the New Mexico Supreme Court explained, "Congress' intent is clear" – the IGRA authorizes states and tribes to resolve regulatory jurisdiction issues for themselves. *Id.* at 657. Therefore, even under traditional Indian law canons of construction, *see e.g. Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985) (holding that ambiguities found in statutes enacted for the benefit of an Indian tribe must be interpreted in favor of the tribe), the New Mexico Supreme Court held that the IGRA authorized the jurisdiction-shifting provisions in Section 8(A). *Id.* at 657 (holding that the *Blackfeet* presumption does not apply). The New Mexico Supreme Court thus held that "state courts have jurisdiction over personal injury actions filed against Pueblos arising from negligent acts alleged against casinos owned and operated by the Pueblos and occurring on pueblo lands." *Id.* at 646.

**B. The *Mendoza* Litigation**

Siblings Michael and Desiree Mendoza attended a wedding reception at the Santa Ana Star Casino where they were served alcoholic beverages and became intoxicated. Michael and Desiree left the Casino in a vehicle with Dominic Montoya, headed south on I-25. Just north of the Tramway exit, their vehicle left the roadway and rolled over, killing Michael and Desiree and injuring Dominic.

The Personal Representatives filed suit in state court against Tamaya claiming that it served alcohol to Michael and Desiree while they were obviously intoxicated, thereby violating Section 184 of the Pueblo Liquor Ordinance and proximately causing Michael and Desiree's deaths. The Personal Representatives did not name the Pueblo as a formal defendant.

Tamaya moved to dismiss the action for failure to state a claim upon which relief could be granted. In the motion, Tamaya argued that the Personal Representatives could only bring their claim in tribal court: the state district court lacked jurisdiction. Following a hearing on the motion, the Honorable Judge Nan G. Nash, the presiding district court judge, dismissed the case. On appeal, however, the New Mexico Court of Appeals disagreed, holding instead that the district court had jurisdiction over the action based on the plain terms of Section 8(A) of the Compact. *Mendoza v. Tamaya Enters.*, 238 P.3d 903, 910-11 (N.M. App. 2010) (citing *Doe*, 154 P.3d at 647, for the proposition that, "for the limited purpose of personal injury actions involving visitor safety, the parties to the Compact agreed to state court jurisdiction").

Tamaya then petitioned for and was granted a writ of certiorari to the New Mexico Supreme Court. The New Mexico Supreme Court affirmed the Court of Appeals, as set forth in the published opinion of *Mendoza v. Tamaya Enterprises, Inc.*, 258 P.3d 1050 (N.M. 2001) (hereinafter "*Mendoza*"). First, the New Mexico Supreme Court addressed whether the state district court had jurisdiction over the case. *Id.* at 1054-55. The court noted that Section 8(A) of

the Compact provides state court jurisdiction over personal injury claims brought by persons who suffer personal injury proximately caused by the tribal entity authorized to conduct gaming pursuant to the Compact. *Id.* The court then cited its prior decision in *Doe* for the proposition that the "jurisdictional shifting" provisions in the Compact, namely Section 8(A), were enforceable. *Id.* (citing *Doe*, 154 P.3d at 657). Thus, even though the Pueblo's Liquor Ordinance provided for exclusive jurisdiction in tribal court, "by virtue of Section 8 of the Compact, the Pueblo unambiguously agreed to proceed in state court for claims involving injuries proximately caused by the conduct of the Casino." *Mendoza*, 258 P.3d at 1055.

The New Mexico Supreme Court then proceeded to the merits of the Personal Representatives' wrongful death claims. The court ultimately concluded that the state court complaint stated sufficient facts to establish a third-party common law claim with respect to the passenger of the vehicle as well as a patron claim with respect to the driver. *Id.* at 1057-60. The court thus remanded the case to the district court for further proceedings consistent with the opinion. *Id.* at 1060.

### C. Litigation Before This Court

After the New Mexico Supreme Court's remand order in *Mendoza*, Tamaya and the Pueblo filed a Complaint in this Court seeking relief in the form of (1) a declaration that the IGRA does not permit the shifting of jurisdiction from tribal courts to state courts over private personal injury lawsuits brought against tribes or tribal entities with respect to claims arising within Indian country, and (2) an order prohibiting Judge Nash from exercising jurisdiction over the state court proceeding and enjoining the Personal Representatives from pursuing their claims in the state court proceeding. *See* Doc. 1.

The Personal Representatives moved to dismiss the Complaint for want of subject-matter jurisdiction under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413

(1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Court denied the motion, explaining that neither the Pueblo nor Tamaya sought appellate review of a claim actually decided by the New Mexico Supreme Court in *Mendoza*. Doc. 43, pp. 10-13. *Rooker-Feldman* did not therefore apply. That being said, though, the Court noted that under appropriate circumstances it could still be bound to recognize the claim- and/or issue-preclusive effects of the *Mendoza* decision. *Id.* at p. 13 (citing *Bolden v. Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006)); *see also id.* at p. 5 n.3. The Personal Representatives then filed the instant motion for summary judgment based on the doctrines of res judicata or collateral estoppel. *See* Doc. 61.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Medina v. Income Support Div.*, 413 F.3d 1131, 1133 (10th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 587–88 (1986). To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016–17 (10th Cir. 2001) (citing *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

## III. Discussion

Generally, the preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by the full-faith-and-credit statute, which provides that state judicial proceedings

"shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. Federal courts rely on state preclusion principles to determine the preclusive effect of a state court judgment. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985) ("a federal court may rely in the first instance on state preclusion principles to determine the extent to which an earlier state judgment bars subsequent litigation"); *see also* Restatement (Second) of Judgments § 86 (1982). Where res judicata prevents a party or its privies from repeatedly suing another for the same cause of action, collateral estoppel prevents a party or its privies from re-litigating "ultimate facts or issues actually and necessarily decided in a prior suit." *Deflon v. Sawyers*, 137 P.3d 577, 582 (N.M. 2006).

**Preliminary Issue – Finality of Judgment in *Mendoza***

Tamaya points out that a prerequisite for the application of either collateral estoppel or res judicata is that the judgment sought to be given preclusive effect must have been a final judgment. Due to the posture of the *Mendoza* litigation, Tamaya contends no such finality is present in this case. As discussed above, the state district court originally dismissed the *Mendoza* case for lack of jurisdiction, and the Supreme Court reversed that decision. The case was then remanded to the trial court for litigation of the merits of the Personal Representatives' claims. Since no judgment on the merits has yet been entered, Tamaya argues it is clear there is no final judgment to be the basis of a finding of preclusion.

This argument need not detain the Court long. New Mexico follows the Restatement and approaches the finality question in a practical rather than technical manner. *See, e.g., Brunacini v. Kavanagh*, 869 P.2d 821, 827-28 (N.M. App. 1993) (relying on Restatement (Second) Judgments, § 13 and comments thereto, to hold judgment may be final for res judicata purposes even if appeal has been taken and not yet resolved). In particular, for collateral-estoppel

purposes at least, "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) Judgments, § 13. Factors to consider in making this determination include whether the parties were fully heard, whether the court's decision was supported by a reasoned opinion, and whether the decision was in fact reviewed on appeal. *Id.* cmt. g. In *Mendoza* there has been a district court decision, a Court of Appeals opinion reversing that decision, and a Supreme Court opinion also reversing the decision. The Supreme Court's decision is unquestionably final enough to be given collateral-estoppel effect, even given the slight possibility the Supreme Court could reverse itself should another appeal ensue once the merits of the underlying claims have been decided. For reasons that will become apparent, the Court need not decide whether the decision is sufficiently final to support application of the bar of res judicata.

### A. Collateral Estoppel/Issue Preclusion

Collateral estoppel, also known as issue preclusion, prevents litigation of issues that have already been necessarily determined between the same parties or their privies in a prior action. *Id.* In New Mexico, before a judgment may be given collateral effect, four conditions must be met:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 850 P.2d 996, 1000 (N.M. 1993).[3] If the movant introduces sufficient evidence to meet all the elements of this test, the Court must then

---

[3] The wording of these four elements differs somewhat between New Mexico and the Tenth Circuit. *Compare Shovelin*, 850 P.2d at 1000 *with Lombard v. Axtens*, 739 F.2d 499, 502 (10th Cir. 1984).

determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation. *See Silva v. State*, 745 P.2d 380, 382 (N.M. 1987)

### 1. Privity between the Pueblo and Tamaya

It is undisputed that Tamaya was a party to the *Mendoza* decision. The Pueblo itself was not, however, a formal party in *Mendoza*. For collateral estoppel to apply to the Pueblo, then, the Personal Representatives must establish that the Pueblo was in privity with its tribal enterprise, Tamaya, which in turn was a party to the *Mendoza* litigation.

Determining whether parties are in privity for purposes of collateral estoppel requires a case-by-case analysis. In *Deflon v. Sawyers*, the New Mexico Supreme Court provided insight into the flexible definition of privity:

> There is no definition of "privity" which can be automatically applied in all cases involving the doctrines of res judicata and collateral estoppel. Thus, each case must be carefully examined to determine whether the circumstances require its application. This is so, notwithstanding the general assumption that res judicata applies only if the parties in the instant action were the same and identical parties in the prior action resulting in a judgment. Privity requires, at a minimum, a substantial identity between the issues in controversy and showing that the parties in the two actions are really and substantially in interest the same.

137 P.3d at 580 (quoting *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1174 (10th Cir. 1979)). The key inquiry then is whether Tamaya and the Pueblo are "really and substantially in interest the same." *Id.*

The Compact grants the Pueblo authority to create a Gaming Enterprise – that is, a "tribal entity created and designated by the Tribe as having authority to conduct Class III gaming pursuant to the Compact." Compact, § 2(D). The Pueblo thus created Tamaya Enterprises, Inc. to operate the Santa Ana Star Casino and conduct Class III gaming on behalf of the Pueblo. *See* Doc. 68, Ex. 1, ¶ 3 (Declaration of Aaron Armijo). According to the corporate charter, Tamaya

is "owned by the Pueblo of Santa Ana for the benefit of the Pueblo and its recognized members." Doc. 68, Ex. 1, Article V ("Charter of Incorporation of Tamaya Enterprises Inc."). Not only is the Pueblo the sole owner of Tamaya, but the Pueblo also has the sole authority to appoint the members of the Tamaya board of directors. Doc. 68, Ex. 1, ¶4.

In an attempt to distance itself from Tamaya, the Pueblo seeks to portray its relationship with Tamaya as nothing more than the relationship between a shareholder (the Pueblo) and a corporation (Tamaya). Specifically, the Pueblo argues that it incorporated Tamaya as a Federally Chartered Corporation under 25 U.S.C. § 477. Because Tamaya is a separate corporate entity, the Pueblo argues that the two are not in privity. *See* 18A Fed. Prac. & Proc. Juris., § 4460 (2d ed.) ("Corporations are treated as entities separate from their officers, directors, and shareholders for purposes of preclusion just as for other purposes."). Tamaya also points out an important fact – that the Pueblo does not control litigation involving Tamaya, and had no role in directing the *Mendoza* case. Tamaya and the Pueblo maintain the *Mendoza* litigation will have no financial impact on the Pueblo, because Tamaya carries liability insurance covering claims such as the one brought by the *Mendoza* plaintiffs.

Despite the above indicia of corporate independence and separation between Tamaya and the Pueblo, however, the Court notes Tamaya cannot be fairly portrayed as a typical publicly-traded corporation. The sole shareholder of Tamaya is the Pueblo, making Tamaya analogous to a wholly-owned subsidiary of a parent corporation. Numerous cases have held, in various contexts, that a wholly-owned subsidiary is in privity with its parent, and vice versa. *See, e.g., In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 17 (1st Cir. 2003); *Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 162 (1st Cir. 2000); *In re Imperial Corp. of America*, 92 F.3d 1503, 1507 (9th Cir. 1996); *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).

To be sure, the mere existence of a parent-corporation/wholly-owned-subsidiary relationship is not sufficient, as a matter of law, to create privity between the two entities.  *See Urohealth,* 216 F.3d at 162 ("We do not suggest that the parent-subsidiary relationship automatically establishes privity…"); *Mars Inc.,* 58 F.3d at 619 (parent exercised complete control over its wholly-owned subsidiary).  Under appropriate circumstances, however, the wholly-owned status of a corporation can be an important factor in determining whether that corporation is in privity with its sole proprietor, whether such proprietor be a parent corporation or, as in this case, a governmental entity.

      The Court also recognizes that the existence of privity for certain purposes or issues does not create privity for any and all legal purposes.  *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) ("Privity may exist for the purpose of determining one legal question but not another depending on the circumstances and legal doctrines at issue."). The Court must therefore examine the particular situation at hand, the relationship between Tamaya and the Pueblo, and the legal issue as to which preclusion is sought.

      It must be recognized at the outset that Tamaya is no ordinary business.  By definition, as noted above, Tamaya is a Gaming Enterprise – that is, a "tribal entity" created by the Pueblo to conduct Class III Gaming pursuant to the Compact entered into by the State of New Mexico and the Pueblo.  *See* Compact, § 2(D).  Tamaya is not merely a "revenue-producing tribal business"; it is an extension of the tribe itself and thus entitled to conduct Class III gaming under the Compact.  *See Allen v. Gold County Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006).  Tamaya is a creature of the Compact, and exercises the rights granted to the Pueblo through that Compact. Concomitantly, Tamaya is subject to the restrictions and obligations imposed on the Pueblo by the Compact, and presumably complies with these obligations as, essentially, an agent of the

Pueblo. These restrictions and obligations include, among others, the following: (1) avoidance of discrimination in hiring and firing Casino employees; (2) providing a grievance process for those employees; (3) requiring Tamaya to purchase liquor-liability insurance policies; (4) using generally accepted accounting principles in Tamaya's books and financial records, and obtaining independent audits annually; (5) maintaining detailed records for at least five years, concerning Tamaya's revenues, expenses, assets, liabilities, and equity; and (6) calculating Tamaya's annual Net Win, as defined by the Compact, and paying the State its proportionate share of that Net Win. Compact, §§ 4, 11. Most significantly for this case, the Compact requires the Pueblo, and therefore Tamaya, to waive its sovereign immunity for certain types of claims and to agree to either arbitrate those claims or litigate them in a "court of competent jurisdiction." Compact, § 8.[4] In sum, Tamaya is a wholly-owned entity created by the Pueblo for one purpose – to conduct the gaming activities permitted under the Compact. Where issues of interpretation or construction of the Compact are concerned, then, Tamaya and the Pueblo have the type of relationship that can give rise to privity.

An examination of the sovereign-immunity question lends weight to the above conclusion. Tamaya, as a wholly-owned entity of the Pueblo, is considered by both the Pueblo and Tamaya itself to be entitled to protection from suit under the Pueblo's sovereign immunity, as is evidenced by Tamaya's corporate charter. *See* Doc. 68, Ex. 1, Charter, Articles IV(B), XVI. However, not every tribal business enterprise is entitled to share in the tribe's sovereign

---

[4] The Court notes there was a suggestion in one of the pleadings to the effect that Tamaya might not necessarily be bound by the waiver-of-sovereign-immunity provisions of the Compact. While the Court need not address this question, on the surface it appears untenable. A Pueblo or Tribe may not enter into an agreement with the State and then avoid the requirements of that agreement by the simple expedient of creating a corporation to engage in the activities allowed by the agreement.

immunity; such protection is limited to entities that are so connected to the tribe they are considered arms of the tribe, or sub-entities of the same. *See Allen*, 464 F.3d at 1046 (tribal sovereign immunity extends to a tribal entity if "the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe"); *Ramey Constr. Co., Inc. v. Apache Tribe of the Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir.1982) (reasoning that resort was a sub-entity of the tribe rather than a "separate corporate entity," and therefore the resort was "clothed with the sovereign immunity of the Tribe"); *see also Native Am. Distrib. v. Seneca-Cayuga Tobacco, Co.*, 491 F. Supp. 2d 1056, 1064 (N.D. Okla. 2007) *aff'd sub nom. Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288 (10th Cir. 2008) (Tribe's tobacco company was, at relevant times, an enterprise or sub-entity of either the Tribe or the Tribal Corporation, rather than a wholly separate corporate entity). The Pueblo, by in effect granting Tamaya arm-of-the-Pueblo status, has indicated its view of the close relationship between the two entities.

In order to find that privity exists, of course, it is not enough to simply determine that two entities are closely related. With respect to the particular issue involved in the preclusion inquiry, the two entities must have virtually identical legal interests, so that one entity's prior litigation of the issue can fairly be said to bind the second entity. *See, e.g., Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1306 (Fed. Cir. 2007) (privity exists when two parties are so closely related, and their interests are so nearly identical, that it is fair to treat them as the same parties for preclusion purposes). Tamaya attempts to argue that its interests in this case as well as *Mendoza* are different than the Pueblo's. Tamaya states it is interested only in having the claim against it litigated in the appropriate forum, while the Pueblo's interest is in protecting its tribal sovereignty. However, despite any difference that might exist in the two entities' motives,

13

each entity's interest in this case is identical, and is the same as Tamaya's in the *Mendoza* litigation – each entity wants to prevent the state court from exercising jurisdiction over the claims brought by the plaintiffs in *Mendoza*. Furthermore, each entity asks this Court to in effect override the New Mexico Supreme Court's decision in *Doe*, which held that state courts do have jurisdiction to hear the type of action brought by the *Mendoza* plaintiffs. Tamaya and the Pueblo thus have identical interests with respect to construction of Section 8 of the Compact. Given the close relationship between the two entities with respect to Compact issues, and the identity of their interests with respect to the state-court jurisdiction issue, the Court finds they are in privity for collateral-estoppel purposes as to the legal questions that have been raised in this case.

### 2. Causes of Action Are Different

The second element for collateral estoppel requires a showing that the cause of action in the case presently before the Court is different from the cause of action in *Mendoza*. *See Shovelin*, 850 P.2d at 1000. Here, the Pueblo and Tamaya seek a declaration that the IGRA does not authorize the shifting of jurisdiction to state court over visitors' personal injury claims. This claim is distinct from the wrongful death claims before the court in the *Mendoza* litigation. On their face, then, the two causes of action differ, thereby satisfying the second element of collateral estoppel. The Court notes the Personal Representatives' argument that the causes of action are actually the same, since the issue of subject-matter jurisdiction is present in both cases. However, the presence of the same legal issue in each case does not make the claims the same for purposes of res judicata or collateral estoppel. Rather, that is the basis for bringing collateral-estoppel arguments into play.

### 3. Actually Litigated and Necessarily Decided

The last two elements of collateral estoppel require a showing that the issue was actually litigated and necessarily decided in a prior action. *See Shovelin*, 850 P.2d at 1000. As stated in Restatement (Second) of Judgments Section 27 cmt. d (1980): "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section." *See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 848 P.2d 1086, 1094 (N.M. App. 1993) (Hartz, J., Concurring). The Personal Representatives contend the issue of the state court's subject-matter jurisdiction was litigated in *Mendoza*, and ultimately decided by the New Mexico Supreme Court. In addition, the Personal Representatives point out the Supreme Court discussed its previous decision in *Doe* in rejecting Tamaya's claim that the state court does not have subject-matter jurisdiction over the *Mendoza* litigation. *See Mendoza*, 258 P.3d at 1054-55.

Tamaya, on the other hand, contends the legal issue argued and decided in *Mendoza* was not the same as the legal argument Tamaya and the Pueblo are advancing in this case. According to Tamaya, it is true both arguments concern the question of subject-matter jurisdiction. However, in *Mendoza* Tamaya did not attempt to attack the Supreme Court's prior *Doe* decision or raise the issue of Section 8 of the Compact, the question that had been decided in *Doe*. Instead, Tamaya maintains it presented a very different objection to the state court's jurisdiction in *Mendoza*. Tamaya's argument in *Mendoza* was essentially as follows: (1) New Mexico's dramshop act preempts any common-law patron-liability claim that might have existed prior to the enactment of the statute; (2) that dramshop act does not apply to Tamaya, which is not licensed under the statute; (3) therefore, the only possible liability Tamaya might have to the *Mendoza* plaintiffs is under the Pueblo's Liquor Ordinance; and (4) that ordinance requires that

15

the tribal court, rather than a state court, determine whether a patron-liability claim can be maintained against Tamaya. This argument, as Tamaya points out, is not at all the same as an argument that *Doe* was wrongly decided. In fact, Tamaya has submitted as exhibits the briefs filed in the New Mexico Supreme Court in *Mendoza*. The brief-in-chief does not cite *Doe* at all and contains no discussion of Section 8 of the Compact. [Doc. 64, Exh. A] In response, the Personal Representatives did cite to *Doe*, and claimed *Doe* was dispositive of the jurisdictional issue. [*Id.*, Exh. B] Tamaya's reply brief did not attack the validity of the *Doe* decision, but merely mentioned *Doe* in passing while discussing which version of the Compact was before the Supreme Court in *Doe*. The reply brief also contained no discussion of the Section-8 argument that was the subject of the *Doe* opinion, but discussed Section 8 only in the context of a choice-of-law analysis.

In this case Tamaya and the Pueblo seek a declaratory judgment holding that *Doe* was wrongly decided, and that the IGRA does not permit state courts to exercise jurisdiction over lawsuits like this one, and that Section 8's conditional grant of such jurisdiction is therefore invalid. As discussed above, this is not the jurisdictional argument made by Tamaya in the *Mendoza* litigation. On the other hand, the Personal Representatives relied on *Doe* in opposition to Tamaya's jurisdictional argument in *Mendoza*, and both the New Mexico Court of Appeals and the Supreme Court similarly relied on *Doe* in their decisions rejecting Tamaya's position. It could also be said that in a sense the validity of *Doe* was necessarily (albeit impliedly) decided by the Supreme Court in *Mendoza*, as *Doe* determined an issue of subject-matter jurisdiction. Such issues are, of course, jurisdictional and must be decided by a court whether or not they are raised by the parties. *See Masterman v. State Taxation & Revenue Dep't,* 964 P.2d 869, 871 (N.M. App. 2004). If the Supreme Court had decided the holding in *Doe* was erroneous, it

would have been bound to affirm the trial court's decision to refrain from exercising jurisdiction over the *Mendoza* case.

The situation before the Court, therefore, is as follows: (a) In *Mendoza*, Tamaya did not challenge the *Doe* decision at all, but attempted what some might call an end-run around it by focusing on dramshop liability and the Pueblo's Liquor Control ordinance; (b) the Personal Representatives argued in *Mendoza* that the *Doe* opinion foreclosed Tamaya's jurisdictional argument; and (c) the Supreme Court agreed with Personal Representaive's argument, thus impliedly reaffirming its prior analysis in *Doe,* although the validity of *Doe* was not raised by either party during the briefing. Given these circumstances, the Court must determine whether it can be said that the question Tamaya seeks to litigate in this case, concerning the legal validity of *Doe* and the existence of state-court jurisdiction over the *Mendoza* litigation, was actually litigated by the parties in *Mendoza*.

This is not an easy question to answer; the analysis is difficult and at times may seem like an exercise in hair-splitting. On the one hand, as noted above both *Mendoza* and this case concern the question of subject-matter jurisdiction, which means the same general question was actually litigated in *Mendoza*, was necessarily decided by the Supreme Court in that case, and is now the entire focus of this federal-court action. Furthermore, *Doe* was the basis of both the Personal Representatives' jurisdictional argument and the Supreme Court's jurisdictional holding. On the other hand, in *Mendoza* the specific jurisdictional arguments raised by Tamaya in this litigation – the legal efficacy of the consent to state-court jurisdiction in Section 8 of the Compact, and the legal validity of *Doe* – were not discussed at all by either party or by the Supreme Court. Instead, the Personal Representatives and the Supreme Court simply assumed *Doe* was correctly decided and applied it to the *Mendoza* situation, while Tamaya ignored *Doe*

17

and presented an argument that had nothing to do with Section 8 of the Compact and its impact, or lack thereof, on state-court jurisdiction.

According to the Restatement, "[a] judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action," and "[a]n issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor ... if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor ... if it is the subject of a stipulation between the parties." Restatement (Second) Judgments, § 27, cmt. e. It is true that Tamaya could have attacked the *Doe* opinion in *Mendoza*, and could have attempted to convince the Supreme Court to reconsider its prior decision, but Tamaya did not do so. This failure was tantamount to a concession or stipulation to the effect that *Doe* was correctly decided, at least for purposes of the *Mendoza* litigation. *See Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrecoverable Trust*, 410 F.3d 304, 312-13 (6th Cir. 2005) (lien was not contested or questioned in prior proceeding; parties therefore effectively stipulated to its validity, meaning the issue was never actually litigated in that proceeding). As the Restatement comment makes clear, however, this type of concession or stipulation, arising out of a failure to litigate a certain issue, does not have collateral-estoppel effect in other litigation.[5] *See also Spectrum*.

The fact that the Supreme Court assumed the validity of *Doe* and relied on it to find jurisdiction does not change this result. Where a court makes a determination, especially considering jurisdiction, that is not the result of contested litigation between the parties, that

---

[5]In this respect collateral estoppel is different than res judicata, for the latter bars any and all claims or arguments that were raised or could have been raised in the prior litigation. *See City of Sunland Park v. Macias,* 75 P.3d 816, 821 (N.M. App. 2003).

18

determination will not give rise to collateral estoppel. *See, e.g., Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553-54 (9th Cir. 2003) ("drive-by" jurisdictional determination that was not result of actual litigation between the parties was not given issue-preclusive effect); *see generally Key v. Wise*, 629 F.2d 1049, 1056 (5th Cir. 1980) (jurisdictional determination by state court is generally conclusive, unless the question was not actually litigated); *cf. Pope v. Gap, Inc.*, 961 P.2d 1283, 1290-91 (N.M. App. 1998) (New Mexico follows rule that consent judgments and settlements are not a proper basis for issue preclusion).

The bottom line is that neither Tamaya nor the Pueblo has yet actually litigated the validity of *Doe*, or the effect of the jurisdiction-shifting provision in Section 8, in any forum.[1] Where such actual litigation has not occurred, it would not be fair to apply collateral estoppel to prevent them from litigating the questions in this Court. Although Tamaya had an opportunity to raise the issues during the *Mendoza* litigation, as the Restatement points out "[t]here are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action." Restatement (Second) Judgments, § 27, cmt. e. Even if Tamaya's motivation was simply to avoid the effects of *stare decisis* in state court, the Court is aware of no authority to the effect that such a motivation is unacceptable and would mandate application of preclusion principles in this situation. Accordingly, the Court finds the issue raised in this case by Tamaya and the Pueblo was not "actually litigated" in *Mendoza*.

---

[1] The Court notes the Pueblo participated in the *Doe* case by filing an *amicus curiae* brief. However, case law indicates that "amicus participation does not trigger collateral estoppel." *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 583 (6th Cir. 2003). The Court is aware of no contrary authority, except where the *amicus* participant also financed and controlled the litigation. *See Montana v. United States,* 440 U.S. 147, 155 (1979).

**B. Res Judicata/Claim Preclusion**

Res judicata prevents a party or its privies from repeatedly suing another for the same cause of action. *See Three Rivers Land Co. v. Maddoux*, 652 P.2d 240, 244 (N.M. 1982), *overruled on other grounds by Universal Life Church v. Coxon*, 728 P.2d 467, 469 (N.M. 1986). For res judicata to apply under New Mexico law, the same cause of action must be involved in both suits. *See Meyers v. Olson*, 676 P. 2d 822, 824 (N.M. 1984). Here, the Complaint raises one issue, whether the IGRA allows states and tribes to shift jurisdiction over a visitor's personal injury suit. As discussed above, this is not the same claim as that presented by the Personal Representatives in *Mendoza*. The Personal Representatives attempt to argue that both claims arise out of the same transaction, but this is not accurate. The "transaction" giving rise to *Mendoza* was the automobile accident that followed the visit to Tamaya; the "transaction" giving rise to the case in this Court is the lawsuit that was filed in state court rather than tribal court. As noted above, the fact that the a subject-matter jurisdictional dispute is involved in both cases does not make the claims the same for purposes of res judicata. Therefore, res judicata is not an appropriate principle to apply in this case.

## IV. Conclusion

Neither collateral estoppel nor res judicata precludes the Pueblo and Tamaya from litigating the issue of whether the state court has jurisdiction over the Personal Representatives' tort claims. The Personal Representatives' motion is therefore denied.

Dated this 9th day of November, 2012.

_____
Bruce D. Black
United States District Judge